# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

**Civil Action No.**

**ALEGRIA BEVERIDGE,**

    **Plaintiff,**

**v.**

**DIGITAL INTELLIGENCE SYSTEMS, LLC and**

**LPL FINANCIAL, LLC,**

    **Defendants.**

## COMPLAINT

The Plaintiff, Alegria Beveridge ("Beveridge" or "Plaintiff"), by and through her undersigned counsel at HKM Employment Attorneys, LLP, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), as her Complaint against the Defendants, Digital Intelligence Systems, LLC ("DISYS" or "Defendants") and LPL Financial LLC ("LPL" or "Defendants"), states as follows:

### NATURE OF THE CASE

1. The Defendants violated Title VII by repeatedly treating the Plaintiff in a hostile, discriminatory manner because she is an assertive woman. *See* 42 U.S.C. § 2000e-2(a)(1); *see also See Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257, 263 (3rd Cir. 2001) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)) (discrimination "because of

1

sex" includes treating a woman with hostility because she does not conform to traditional, regressive gender stereotypes, such as beliefs that a woman must be deferential).

2. The Defendants further violated Title VII when they terminated the Plaintiff's employment in retaliation for her complaints of a hostile work environment. *See* 42. U.S.C. § 2000e-3. *See also Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011) (protected activity includes "oral as well as written complaints").

3. Beveridge filed Charges against both Defendants with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") on December 14, 2022. She received a Notice of Right to Sue both Defendants from the EEOC on September 19, 2023. This Complaint is being filed within 90 days of her receipt of that Notice.

4. Beveridge seeks back pay, front pay, compensatory and punitive damages, reasonable attorneys' fees, and the costs she has incurred as a result of the Defendants' actions. *See* 42 U.S.C. § 2000e-5; 42 U.S.C. § 1981a.

## PARTIES

5. Beveridge is a Colorado citizen who is domiciled at 3524 Ferns Road, Elizabeth, Colorado 80107.

6. At all times relevant to this Complaint, Beveridge was an "employee" entitled to the protections of Title VII. *See* 42 U.S.C. § 2000e-(f).

7. DISYS is a Delaware limited liability company with its principal office at 8270 Greensboro Drive, Suite 1000, McLean, Virginia, 22102.

8. LPL is a California limited liability company, with its principal office at 4707 Executive Drive, San Diego, California 92121.

9. At all times relevant to this Complaint, the Defendants were "employers" under Title VII. *See* 42 U.S.C. § 2000e-(b).

## JURISDICTION AND VENUE

10. Beveridge hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law. Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

12. Venue is proper before this Court because a substantial part of the events giving rise to the Plaintiff's claims occurred in Colorado. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

13. Beveridge hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

14. Beveridge was employed by LPL through DISYS as a Portfolio Lead from October 2021 to September 2022 when she was terminated.

15. Much of Beveridge's role as Portfolio Lead was to implement "Agile" software principles, and to hold teams throughout LPL accountable for those principles.

16. When hired, Beveridge was told that her role was to serve as "a strong voice for the process" of implementing Agile principles throughout LPL.

17. Not long after Beveridge was hired, her supervisor, Blair Black, told her that she might receive "push back" from LPL's male Senior Vice Presidents ("SVP"s) who may be "uncomfortable" with Beveridge—a woman—in her role.

18. Throughout her employment, Beveridge performed her job as instructed, while doing her best to avoid communicating in an adversarial manner.

19. Although Black and others at LPL initially praised Beveridge's performance, certain male SVPs became more and more hostile towards Beveridge. They demeaned her in phone calls and email communications while also dismissing her comments or talking over her in meetings or refusing to speak with her. All of these actions hindered Beveridge's ability to do her job on near-daily basis.

20. Beveridge initially brought her concerns of such hostile behavior to Black, who promised to "escalate," but it is not clear if she ever did so.

21. In a conversation between Beveridge and her supervisor, Beveridge pointed out that male executives treated Black—a woman—in a similar manner, but were not as hostile towards Black because she had a "demure" personality.

22. LPL Senior Vice President, Megan Perry, contacted Beveridge shortly after her conversation with Black. Perry told Beveridge that she was not aware of any prior concerns or complaints on Beveridge's behalf, but that she was willing to "open a case" with LPL Human Resources. Perry never spoke to or contacted Beveridge again.

23. On September 8, 2022, Beveridge sent an email to Treicy Wan at DISYS Human Resources, stating:

> "Treicy,
>
> As an HR associate, I would like to formally report to you that I have been in an environment of extreme work incivility bordering on a hostile work environment for several months. I have been in constant contact with Blair Black of LPL Financial on the situation, as well as Megan Perry. I have also informed Tyler and Juster Maharg at DISYS. Not only has nothing been done, but there is no plan to change anything. I have simply asked to be treated with basic respect, but have been told by LPL that is not going to change. I feel it is important to have this documented.
>
> Alegria"

24. On September 23, 2022, Beveridge was contacted by Human Resources and informed she was being let go. When Beveridge inquired why she was being terminated, she was told that "leadership [LPL Management and DYSIS] all agrees that you should move on."

25. Thus, the Defendants jointly terminated the Plaintiff on September 23, 2022.

26. Beveridge timely filed Charges of Discrimination against both Defendants with the Colorado Civil Rights Division ("CCRD") and the EEOC on December 14, 2022.

27. The EEOC issued its Notice of Right to Sue to Beveridge on September 19, 2023. This Complaint has been timely filed within 90 days of her receipt of the EEOC Notice.

## CLAIM FOR RELIEF

## VIOLATIONS OF TITLE VII

## 42 U.S.C. § 2000e *et seq.*

### *Against Both Defendants*

28. Beveridge hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

29. Title VII prohibits employers from discriminating against any individual "because of such individual's race, color, religion, *sex*, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1) (emphasis added).

30. Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *see also Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1739 (2020).

31. Discrimination "because of sex" includes treating a woman with hostility because she does not conform to traditional, regressive gender stereotypes, such as beliefs that women must be deferential and sweet. *See Bibby*, 260 F.3d at 263 (*citing Price Waterhouse*, 490 U.S. at 250); *cf. Bostock*, 140 S. Ct. at 1742.

32. A Title VII plaintiff-employee claiming employment discrimination must show that: (1) she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that at the time the adverse employment action was taken, her job performance was

satisfactory; and (4) that the employment action was taken because of a discriminatory motive. *See Fischer v. Forestwood Co.*, Inc., 525 F.3d 972, 979 (10th Cir. 2008).

33. Once the plaintiff-employee establishes the above elements, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action." *Salemi v. Colo. Pub. Emp. Ret. Ass'n*., 176 F. Supp. 3d 1132, 1144 (D. Colo. 2016), (citing *Mickelson v. N.Y. Life Ins. Co*., 460 F.3d 1304, 1311 (10th Cir. 2006)).

34. If the employer-defendant articulates such a reason, the employee-plaintiff may prevail by demonstrating that the employer's reason is pretext, which she may do by showing (A) the employer's explanation is false or (B) the employer treated similarly-situated employees outside of [her] protected class more favorably. *See Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d 1160, 1167-68 (10th Cir. 2007).

35. Title VII also prohibits retaliation, *i.e.*, the taking of adverse actions against an employee for complaining about conduct that the employee reasonably believes to be a violation of the law. *See* 42 U.S.C. § 2000e-3; *see also Kasten*, 563 U.S. at 14 ("protected activity" met by "oral complaints, as well as by written ones").

36. A plaintiff-employee may establish a retaliation claim by showing that: (1) she engaged in protected activity by communicating with her employer regarding conduct that she reasonably believed to be a violation of Title VII; (2) her employer took an adverse action against her; and (3) the employer would not have taken the adverse action but for the employee's protected activity. *See Bostock*, 140 S. Ct. at 1739, *Univ. of Tex. Sw. Med. Ctr. v.*

7

*Nassar*, 570 U.S. 338, 350 (2013); *Gross v. FBL Fin. Servs., Inc.*, 577 U.S. 167, 176 (2009); *Kasten*, 563 U.S. at 14.

37. Under Title VII, two employers may be jointly liable for discrimination, harassment, or retaliation where they "share or co-determine those matters governing the essential terms and conditions of employment." *See Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014).

38. Employer-defendants who violate Title VII may be liable for back pay, front pay, compensatory and punitive damages of up to $300,000.00, reasonable attorneys' fees, and the costs of litigation. *See* 42 U.S.C. § 2000e-5; 42 U.S.C. § 1981a.

39. At all times relevant to this Complaint, Beveridge was an "employee" entitled to Title VII protections. *See* 42 U.S.C. § 2000e-(f).

40. At all times relevant to this Complaint, the Defendants were "employers" under Title VII. *See* 42 U.S.C. § 2000e-(b).

41. Beveridge belongs to a protected class under Title VII because she is a woman.

42. During her employment with LPL through DISYS, Beveridge was repeatedly treated in a hostile, discriminatory manner by male SVPs because she is an assertive woman. *See Price Waterhouse*, 490 U.S. at 250.

43. Beveridge engaged in protected activity under Title VII by complaining to management and Human Resources that she was experiencing a hostile work environment.

44. The Defendants responded by terminating Beveridge's employment in retaliation for her complaints.

45. Thus, DISYS and LPL are jointly liable for discrimination and retaliation in blatant violation of Beveridge's civil rights under Title VII, and for all of the harm she has suffered as a result of the violations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully asks that the Court enter judgment in her favor and against the Defendants, and to:

A. Enter a declaratory judgement condemning the Defendants' violations of Title VII;

B. Award the Plaintiff:

    a. Back pay and front pay in an amount to be determined at trial;

    b. Compensatory and punitive damages of up to $300,000;

    c. The Plaintiff's reasonable attorney's fees and costs; and

C. All other and further relief that the Court deems to be equitable and just.

Respectfully submitted on this 13th day of December, 2023.

                                       **HKM EMPLOYMENT ATTORNEYS LLP**

                                       By: */s/ Adam M. Harrison*
                                       Adam M. Harrison
                                       Claire E. Hunter
                                       HKM Employment Attorneys LLP
                                       518 17th Street, Suite 1100
                                       Denver, Colorado 80202
                                       720.255.0370
                                       aharrison@hkm.com
                                       chunter@hkm.com

                                       *Counsel for the Plaintiff*